IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MOSAID TECHNOLOGIES INC.,** *Plaintiff,* | § § § § § | |
| -v- | § § § | 1:25-CV-00358-ADA 1:25-CV-00436-ADA |
| **INFINEON TECHNOLOGIES AG, INFINEON TECHNOLOGIES AMERICAS CORP.,** *Defendants.* | § § § § § | |

## ORDER

Before the Court is Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California ("NDCA") (Dkt. 26 in -358; Dkt. 25 in -436).[1] After due consideration of the parties' briefs, applicable law, and having heard argument on January 8, 2026, the Court finds that Defendants' Motion should be **DENIED**.

## I.    FACTUAL BACKGROUND

Plaintiff MOSAID Technologies Inc. ("Plaintiff" or "MOSAID") sued Defendants Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas Corp. ("IFAM") (collectively, "Defendants" or "Infineon") alleging infringement of three patents. *See* Dkt. 1, Compl. ¶¶ 7, 95-186. Plaintiff's suit was brought in the Western District of Texas ("WDTX"). Plaintiffs accuse Infineon of offering for sale and selling "certain processor products such as programmable system on a chip ("PSoC") products including at least the PSoC 3, PSoC 4, PSoC 5, and PSoC 6 families, and wireless connectivity SoCs including at least the AIROC Wi-Fi and Bluetooth Combo products, among other substantially similar processor products" (collectively,

---

[1]All references herein are to the record in 1:25-CV-00358.

the "Accused Products/Services"). *Id.* ¶ 15.

Defendants filed this motion to transfer venue to the Northern District of California, arguing that the significant bulk of the design and development witnesses and evidence in this case center around the NDCA. Dkt. 26 at 1. The motion to transfer was filed July 18, 2025. *Id.* After conducting venue discovery, Plaintiff responded in opposition on November 12, 2025, (Dkt. 54)[2] and Defendants replied on November 26, 2026 (Dkt. 51). The Court heard arguments on the motion to transfer on January 8, 2026.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, ... a district court may transfer any civil action to any other district or division where it might have been brought ..." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, *case-by-case consideration* of convenience and fairness.' " *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citation omitted) (emphasis added).

The preliminary question under § 1404(a) is whether a civil action " 'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) [hereafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted).

---

[2]Citations are to the sealed versions of the documents, which were docketed out of chronological order. The redacted version of the response is at Dkt. 49.

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)).

The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. This is because "the Court must give some weight to the plaintiffs' choice of forum." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 302 (5th Cir. 2024) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013)). While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Transfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party "clearly establishes good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (quoting *Volkswagen II*, 545 F.3d at 315. (5th Cir. 2008)) (cleaned up).

It is the movant's burden—and the movant's alone—to "adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*

At minimum, showing "good cause" requires the movant "clearly [to] demonstrate" that its chosen venue is "clearly more convenient." *Id.* That standard is not met if the movant merely shows that the transferee venue "is more likely than not to be more convenient." *Id.* Likewise, "the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Id.* Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

### III.   DISCUSSION

#### A.  Plaintiffs could have brought this case in the NDCA.

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Under 28 U.S.C. § 1400(b), a claim for patent infringement may be brought "where the defendant has committed acts of infringement and has a regular and established place of business." The regular and established place of business must be a physical place in the district, and must be the place of the defendant. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Defendant IFAM is a Delaware corporation with over ███ employees in a regular and established place of business in San Jose, California. Dkt. 26-2, Pak Decl., ¶ 11. Infineon AG is a foreign corporation that stipulates to specific jurisdiction in the NDCA and could have been sued in the NDCA at least to the same extent as they could be sued in the WDTX. Dkt. 26, Motion, at 3; 28 U.S.C. § 1391(c)(3). The Court therefore proceeds with its analysis of the public and private interest factors to determine if the NDCA is clearly more convenient than the WDTX.

### B. Private Interest Factors

The private interest factors here weigh slightly against transfer, or at the very least, are neutral.

### 1. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Infineon argues that under this factor, this Court should only look to where the accused products in this case had relevant design and development work performed. Dkt. 26, Motion, at 5–6. Defendants include a pie chart, relying on the testimony of three witnesses, to convey that "███ of the Accused Products[] were not designed or developed in Austin, but rather in San Jose, CA or Lynwood, WA with support in some cases from India or Japan." *Id.* at 6. Defendants argue the "majority of the folks who created the documents are located in the Northern District of California or closeby. And that means the custodians for the documents that were going to be relevant are located in the Northern District of California." Dkt. 70, Transcript, at 11:17–22. They argue that only certain people with certain qualifications can access an online version of the document. *Id.* at 12:3–13:19. Defendant also asserts that MOSAID "has 'failed to identify a single source of physical proof located in this District.'" Dkt. 51, Reply, at 4.

MOSAID conversely asserts multiple counter arguments. First, MOSAID asserts that

5



Infineon only has physical servers in ████ (along with some in ███████████████████; █████████████) for the Accused Products' documentation. Dkt. 54, Response, at 5. Plaintiff specifically points out that the ████ servers host Defendants' "███████████ ███████████████████████████████ ███████ – likely containing this case's key technical evidence." *Id.*

Second, MOSAID asserts that the location of research and development ("R&D") should not sway this factor. *Id.* Plaintiff asserts that even if it did sway this factor, Defendant still ignores the fact that R&D for the Accused Products also occur in Austin. *Id.* Plaintiff supports this, further arguing that Defendant's pie chart, "which is central to its R&D argument," is "misleading and should carry no weight" because "the pie chart counts *individual SKUs*" for a number of accused products "but counts *only three* PSoC Edge Families." *Id.* at 6.

Lastly, Plaintiff asserts that "this factor [only] concerns the location of evidence, which Infineon fails to address." *Id.* MOSAID argues that Defendants' argument about MOSAID's " 'ties to NDCA' fails too" because "MOSAID's California presence is [only] a single employee in a shared office space, and Infineon points to no evidence existing there." *Id.*

The Court finds that the evidence in this case, both physical and electronic, will likely come from three locations: San Jose, California; Austin, Texas; and Lynwood, Washington. The Court credits ████████████████████████ declarations that the Accused Products were partially designed in San Jose, Lynwood, and Austin. The Court, however, has concerns regarding the accuracy of the evidence. First, the pie chart that Defendants repeatedly use to support their statistical assertions paints an inaccurate picture of the Accused Products at hand. As MOSAID pointed out, Defendants' pie chart counts individual SKUs for PSoC 3/4/5/6 to inflate its blue slice representing San Jose and Lynnwood development, but only three PSoC Edge *families*—as

opposed to SKUs or internal IDs—to shrink the red sliver representing Austin development. Dkt. 54, Response, at 6.

Secondly, the declarants all had little to no personal knowledge of Infineon's Austin operations. In each of their declarations, each witness testified that they either relied on a small number of third-party opinions or that they did not investigate the Austin location personally at all. Dkt. 70, Transcript, at 20:15–21:5; Dkt. 54, Response, at 11–13. They further admit that Infineon omitted several documents pertaining to the Austin location in their reports. Dkt. 54, Response, at 13. Thus, only a minority of the design, testing, and engineering evidence can be concluded to be located at Infineon's office in San Jose. MOSAID's one-person office in San Jose will likely have only a small amount of relevant evidence.

In contrast, there is likely electronic and physical evidence in the Austin area. The Court credits Infineon's witnesses' declarations stating that multiple accused products were designed in Austin, Texas. Even if the pie chart and omissions of relevant reports were not relevant, Defendant concedes that at least one employee in Austin, ███████████, has access to Infineon's restricted files. Dkt. 70, Transcript, at 12:3–21. Thus, there is likely electronic and physical evidence of direct infringement in the Austin area. This evidence near Austin weighs against transfer and cancels out the convenience of evidence in the San Jose area.

Moreover, the allegations of indirect and contributory infringement play an important role in this case. MOSAID accuses customers of Infineon in the Austin area of infringement such as ██████████████████. Dkt. 70, Transcript, at 24:22–25; Dkt. 1, Compl., ¶¶ 7–8, 29, 36, 41, 48, 54, 61. All three are entities who work with Infineon in Austin and who likely have evidence of indirect or contributory infringement. This evidence near Austin additionally weighs against transfer, pushing this factor to slightly weigh against transfer.

Upon balancing the evidence in the San Jose area, the Austin area, and the Lynwood area, the Court finds the relative ease of access to sources of proof weighs against transfer or at the least, is neutral.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person ... is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316); see also *In re Juniper*, 14 F.4th 1313, 1316 (Fed. Cir. 2021) ("the private factors are ... (2) the availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order ...") (emphasis added).

Infineon identifies twenty-five potential third-party witnesses residing in the Northern District of California. These include former employees, ▮▮▮▮▮▮▮▮▮, potential prior art authors, and other third parties. Dkt. 51, Reply, at 4; *see also* Dkt. 26, Motion, at 8. Infineon explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 70, Transcript, at 14:1–5. Additionally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, resides near San Jose. Dkt. 26, Motion, at 8. Further, Infineon points to ▮▮▮▮ engineers in Bangalore. *Id.*

Infineon also identifies Brian Kelleher, Kevin Kranzusch, Barry Wagner, Jonah Alben, Sonny Yeoh, David Reed, and Nick Triantos as potential witnesses with knowledge of prior art. *Id.* at 9. Those individuals are current and former NVIDIA employees. *Id.* at 9. Additionally, Sameer Halepete, H. Peter Anvin, Godfrey D'Souza, Keith Klayman, Andrew Read, Louis Kordus, and James Burr are identified as having likely knowledgeable about Transmeta Crusoe CPU—which Infineon maintains is likely to be prior art. *Id.* Infineon cites to ████ ████ which "identifies and specifically names ████████ west coast based individuals involved in the design and development of the features and technologies accused in this case with regard to ████████ of the Accused Products." *Id.* Finally, two inventors of the '306 patent appear to currently reside in NDCA: Barry Alan Hoberman and Daniel L. Hillman. *Id.* at 10.

In response, MOSAID asserts that Infineon's non-party NDCA witnesses are irrelevant and that Texas has many more relevant third-party witnesses. MOSAID first points out that Infineon "has not 'alleged or shown that any witness would be unwilling to testify,' [and therefore,] this factor should receive little weight." Dkt. 54, Response, at 6. MOSAID then contends that Infineon failed to show their identified, prior art non-party witnesses are relevant. *Id.* at 6–7.

Regarding Broadcom, MOSAID first notes that when Infineon first acquired AIROC from Broadcom, "it also acquired ████████



████████ ." *Id.* at 6 (████████

████████ MOSAID continues, claiming that Infineon never shows need to subpoena ████████ . *Id.*

Regarding the NVIDIA and NSC prior art witnesses, MOSAID posits that they are irrelevant because "Infineon's invalidity contentions do not assert those systems and Infineon has

not produced any alleged system prior art documents for them," and even if they were originally asserted, "they did not survive Infineon's November 3 prior art election." *Id.*

As to the Transmeta system, MOSAID argues that "Infineon has not shown why any of the listed individuals are likely to have relevant knowledge other than the fact their LinkedIn profiles show Transmeta as a former employer." *Id.* (citing *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) (holding LinkedIn page was too speculative to support potential relevance)). MOSAID further argues that Infineon's identified former Infineon employees are all either posited without personal knowledge of the information or are outside the subpoena power of both districts.

MOSAID supplements this argument, further listing other relevant non-parties in Texas. First, MOSAID points out that Infineon recently sold its "Fab25" manufacturing facility in Austin to SkyWater Technology, ███████████████████████████████████████ ███████████████████████ MOSAID argues that "nearly a thousand of Infineon's Austin-based employees became SkyWater employees," and ███████████████████████████ ██████████████████████████████████████████████,... which is relevant at least to infringement." *Id.* at 8 (███████████████████████████████). In Footnote 6, MOSAID also specifically points out that "Infineon also has former engineers in Austin ██████████████████████████████████████ as having relevant knowledge for accused products." *Id.* at 8, n.6.

Second, MOSAID argues that there are relevant former MOSAID employees, ████████ ███████████████, who reside in Texas and are subject to this Court's subpoena power. *Id.* at 8. These former employees are asserted to have been involved in early licensing negotiations or

have some knowledge about the prosecution and portfolio management activities for one or more of the Asserted Patents. *Id.*

Lastly, MOSAID contends that there are "several third-party distributors and customers in Texas and this District (e.g., ███████████████████, [who] have information about downstream sales and use of accused products." *Id.* (citing Ex. 2 at 1–3, 15–22; Ex. 23 at 2; Ex. 24 at 1–2; Ex. 25 at 2; Dalbey Tr. 28:5–8).

The Court agrees that the fifteen prior art witnesses identified by Infineon may be relevant at trial. While the Court agrees with MOSAID that prior art witnesses are unlikely to testify at trial, the Federal Circuit has held it is an error to disregard prior art witnesses simply because prior art witnesses are generally unlikely to testify at trial. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021); *see also AlmondNet, Inc. v. Samsung Elecs. Co., Ltd.*, W-21-CV-00891-ADA, 2022 WL 17574082 (W.D. Tex. Nov. 28, 2022). The Court concludes that the prior art witnesses for NVIDIA, NSC, and Transmeta have relevant knowledge of prior art references and systems. While the Court would be able to give the witnesses for NVIDIA and NSC more weight if Infineon included them in their prior art elections, the Court does not fully discount the presence of these prior artists in the NDCA. Similarly, while the Court would be able to give the witnesses for Transmeta more weight if Infineon explained their relevance further, the Court does not fully discount the presence of these prior artists in the NDCA.

The Court also agrees that the former employees and other third-party witnesses identified by Infineon may be relevant at trial. The Court agrees that ████████████████████ ███████████████████, may be relevant at trial due to the Accused AIROC Products having their origins at ████████. While the Court would be able to give ████████ more weight if

11

Infineon explained his relevance further, the Court does not fully discount the presence of this third-party witness in the NDCA.

The Court also agrees that the ███████████████████████████████████████ While the Court would be able to give the ████████ former employees more weight if Infineon explained specifically which employees they want to subpoena and their relevance, the Court does not fully discount the presence of these former employees in the NDCA.

The Court lastly agrees the two inventors of the '306 Patent Infineon asserts may be relevant at trial.

The Court does not consider Infineon's assertion of ████████████████████████████ in the analysis of this factor. Infineon has not identified any specific ██████████████████████ ████████ that would be called to testify at trial. Further, the Federal Circuit has held that courts must not give significant weight to the inconvenience of international witnesses as these witnesses will be "required to travel a significant distance no matter where they testify." *In Re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009).

On the other hand, the Court agrees with MOSAID that coupling the provided former Infineon and MOSAID employees with distributors for the Accused Products in Texas weighs against transfer. First, the Court agrees with MOSAID that the provided former Infineon employees may be relevant at trial. MOSAID identified ***nearly a thousand*** former Infineon employees (now acquired by SkyWater Technologies) who directly manufactured and tested the accused products here. Dkt. 54, Response, at 8 (citing Ex. 22). These lists of employees include fab leads and former engineers located in Austin who are "knowledgeable about the manufacture and testing of the accused products" in Infineon's former "Fab25" semiconductor plant. *Id.*

Second, the Court agrees with MOSAID that the former employees involved in licensing and prosecuting MOSAID's intellectual property may be relevant at trial. MOSAID identified two ex-employees in Texas who were involved in licensing negotiations with Infineon and prosecution and portfolio management for one or more of the Asserted Patents. *Id.* The Court concludes that these former employees have relevant knowledge of the Accused Products and MOSAID's intellectual property asserted in this case.

Lastly, the Court agrees with MOSAID that several of the third-party distributors and customers of the Accused Products at hand may be relevant at trial. The Court acknowledges that the allegations of indirect and contributory infringement play an important role in this case. MOSAID accuses customers of Infineon in the Austin area of infringement. Dkt. 70, Transcript, at 24:22–25; Dkt. 1, Compl., ¶¶ 7–8, 29, 36, 41, 48, 54, 61. All are entities who work with Infineon in Austin who likely have evidence of indirect or contributory infringement. While the Court would be able to give these entities and their employees more weight if MOSAID explained specifically which employees they want to subpoena and their relevance, the Court does not fully discount the presence of these former employees in the WDTX.

Because a greater number of prior art witnesses are located within the subpoena power of this district, the Court concludes that this factor at least weighs slightly against transfer. The Court declines to conclude that it weighs strongly against transfer because MOSAID did not provide any information regarding the specifics or relevance of various asserted third-party witnesses.

### 3. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-

00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). In essence, the Federal Circuit has found that time away from an individual's home is a more important metric than distance. *Id.*

According to Infineon, "the *vast bulk* of the likely witnesses in this case…*all* center around the NDCA, and not Austin." Dkt. 26, Motion, at 10. In contrast, MOSAID alleges that Infineon has multiple relevant witnesses in, near, or closer to the WDTX. Dkt. 54, Response, at 2–4. Infineon identifies six individuals with knowledge of research, design, and development of certain Accused Products located in Lynwood, Washington, two individuals with knowledge of testing of Accused Products in Lynnwood, Washington, and four individuals with knowledge of research, design, and development of certain Accused Products located in San Jose, California. Dkt. 26-1, ████████ ¶¶ 32-43. Contrastingly, MOSAID identifies one witness located in Kentucky, one in Michigan, and one in Germany. Dkt. 54, Response, at 3. Each group of witnesses will be discussed below.

1. Infineon's Employees in the NDCA

According to Infineon, most of the witnesses knowledgeable of the accused products work in Infineon's offices in San Jose, CA, and Lynwood, WA. Dkt. 26, Motion, at 10–12. Infineon has identified the following potential willing witnesses with alleged knowledge on design and development of ███ of the Accused Products in the NDCA: ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████.

████████████████████████████████████████

████████████████████ Dkt. 26-1, ████████, ¶¶ 32-41.

Additionally, Infineon identifies west coast based individuals with alleged knowledge of the design and development of another ███ of the Accused Products: ████████████

████████████████ Dkt. 26-3, ████████ ¶¶ 14-15. Notably, there is overlap in some of Infineon's lists of potential willing witnesses—casting some doubt on whether statements on quantities of witnesses can be compared without further clarification. Infineon also cites to ████████████ declaration that identifies four designers in San Jose: ████████████████,

████████████████. Dkt. 26-4, ████████ ¶¶ 11-14. Finally, Infineon points to licensing related witnesses in the San Jose area—not providing substantial detail on their particular knowledge. Dkt. 26, Motion, at 11 (citing Dkt. 26-2, ████████ ¶ 19).

Regarding Infineon's declarants, ████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████

Infineon argues that the NDCA is a far more convenient forum for these witnesses than the WDTX. *Id.* at 10–12. Infineon goes to great lengths to suggest that "all of [some of the accused product lines] have multiple engineers and developers for the accused functionalities on the West Coast." Dkt. 70, Transcript, at 6:16–18. They go on to argue that "there are…a small minority [of these engineers and developers] compared to the number in other jurisdictions [here in Austin]." *Id.* at 6:10–25.

In response, MOSAID argues that three of the four declarants Infineon relies on ██████ ███████████████ ) lack personal knowledge of Infineon's Austin office and are identifying individuals based on one or two people's directions. Dkt. 54, Response, at 11–12; Dkt. 70, Transcript, at 20:15–21:5. MOSAID points out that these declarants admit to not interviewing or investigating the Austin offices, relying on characterizations of Infineon's counsel. Dkt. 54, Response, at 11–13; Dkt. 70, Transcript, at 20:15–21:20. These declarants even admit that Infineon omitted reports pertaining to the Infineon's Austin offices when identifying R&D teams. Dkt. 54, Response, at 13.

MOSAID further suggests that the pie chart Infineon included about R&D personnel is heavily skewed. *Id.* at 6. MOSAID notes that the pie chart only accounts for "individual SKUs" for accused products rather than counting accused products' families (which are also accused here), thus making slivers weighted towards personnel in NDCA. *Id.* MOSAID supplements this argument, indicating that Infineon overlooked multiple WDTX-based witnesses that may be

relevant, and on balance, that the WDTX is more convenient for the witnesses identified. *Id.* at 2–4.

The Court finds that Infineon likely has 18 potentially relevant west coast-based employees. It is undisputed by both parties that Infineon's declarants are willing witnesses with potentially relevant information. The Court agrees with MOSAID that the declarations are of dubious value given that the declarants admit to omitting data points and naming witnesses not based off of personal knowledge, but based off counsel's questions. However, the declarations are deemed reliable because they assert the Defendants' employees in NDCA have unique knowledge regarding the accused products.

The Court agrees with Infineon that the NDCA would be a more convenient forum than the WDTX for Infineon's named employees in both San Jose, CA and Lynwood, WA. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In Re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

2. Infineon's Employees in or near Austin, Texas

Infineon repeatedly denies that there is more than a small percentage of relevant witnesses in Austin. Dkt. 26, Motion, at 10; Dkt. 51, Reply, at 3; Dkt. 70, Transcript, at 6:24–25. In fact, in Infineon's reply brief, it states that the employees and teams it identified in Austin in its own ███,
it provided MOSAID were not inclusive "of everyone who worked on a product." Dkt. 51, Reply, at 2.

In response, MOSAID identified multiple Infineon employees in Austin which it alleges are relevant. Dkt. 54, Response, at 2–4. First, it identifies over ████████████



of the employees in Infineon's ▮▮▮▮▮▮ cites as "the best documentary source" for R&D witnesses. *Id.* MOSAID then summarily states that there are at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 3.

In reply, Infineon argues that MOSAID never points to how any of these listed witnesses "know about the accused features." Dkt. 51, Reply, at 2. Infineon argues that the ▮▮▮ are only one data point and are not inclusive of everyone who worked on a product. *Id.* They further argue that MOSAID relies on generic R&D numbers and generic engineering/manufacture activity in Texas. *Id.* During the hearing, Infineon specifically pointed out that one potential witness, ▮▮▮ ▮▮▮, is merely a project manager for the accused products. Dkt. 70, Transcript, at 8:7–14.

The Court finds that there are likely at least 31 total relevant employees in Infineon's Austin office. In considering employees identified from the ▮▮▮ provided by Infineon, the Court finds that most witnesses there are relevant to transfer analysis. Infineon attempts to argue that MOSAID cannot rely on generic R&D numbers, yet they do the same by relying on witnesses identified in inconsistent declarations from their declarant witnesses. Infineon cannot have it both ways. If the Court is to agree that the R&D witnesses named by the declarants are relevant, then the Court must also agree that MOSAID's named R&D witnesses are relevant as both lists worked on accused features and/or the attached Accused Products. The Court concludes that the WDTX is a slightly more convenient forum than the NDCA for Infineon's Austin-based technical employees.

Even if this Court agrees that both lists should be struck because both parties "generically descib[e] the positions without providing analysis on what type of testimony or information might

be elicited from each of the identified employees," this Court can agree that Infineon does not provide a compelling argument that the four declarants would find the NDCA more convenient. *Logantree LP v. Apple Inc.*, No. 6:21-cv-00397-ADA, 2022 WL 1491097, at *7 (W.D. Tex. May 11, 2022) (When parties are able to "articulate the relevant and material knowledge" that the employees identified by LinkedIn possess, the Court may give weight to them.); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) (properly excluding an employee when parties were "not at all specific about what testimony it expected to elicit from Mr. Greene, or even if he possesses knowledge of the facts relevant to this infringement action").

Only one declarant submitted by Infineon resides or works closer to the NDCA – █████████ █████  The other three declarants either (a) work and reside in Austin (███████), (b) work and reside in a location closer to the WDTX (███████████), or (c) have indicated they will ████████████████████████████████████████████

In conclusion, the Court finds that this factor slightly weighs against transfer, or at the very least, is neutral. While Infineon has identified at least 18 likely willing witnesses in NDCA, MOSAID has identified 31 likely willing witnesses in the WDTX. There may be more relevant witnesses in WDTX because of the omissions of data points by Infineon's declarants and their lack of personal knowledge on the matter.

4. **All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive**

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Infineon argues that this factor favors transfer because most witnesses are in the transferee forum and MOSAID has no presence in the WDTX. Dkt. 26, Motion, at 12. Infineon also argues that MOSAID has participated in litigation in the NDCA involving similar technology, so courts

in the NDCA have prior experience and familiarity that could be leveraged by transfer. *Id.* at 12-13.

MOSAID argues that Infineon is incorrect that "most witnesses" are in the NDCA—because more relevant witnesses are actually in the WDTX. Dkt. 54, Response, at 9. Additionally, MOSAID argues that the prior NDCA cases were litigated over a decade ago and involved "memory and circuits"—not the same patents at issue in this case. *Id.* Finally, MOSAID argues that its Canadian citizenship should not impact this factor, particularly because the Fifth Circuit "[has] never put a geographic caveat on [its] repeated statements about the plaintiff's choice of venue." *Id.* (quoting *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 539 (5th Cir. 2024) (Oldham, J., concurring)).

The Court finds that this factor is neutral. Infineon has not persuaded the Court that it is clear more relevant witnesses are in the NDCA. The NDCA's familiarity and prior experience will not necessarily be relevant to these particular cases—given that these are not the same patents and substantial time has passed. Finally, the Court will not wholly discredit MOSAID's choice of venue solely by virtue of its Canadian citizenship. This factor is therefore neutral.

### C. Public Interest Factors

The public interest factors here are neutral.

#### 1. The Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The relevant inquiry under this factor is the "speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343 (citations omitted). This factor is "the

most speculative" and is given little weight compared to the other transfer factors. *XR Commc'ns*, 2022 WL 3702271, at *9 (citing *In re Genentech*, 566 F.3d at 1347).

Infineon argues that this factor is neutral, pointing out that the Federal Circuit has recently made clear that speed to disposition is not "important enough to be assigned significant weight in the transfer analysis." Dkt. 26, Motion, at 13 (citing *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021)). MOSAID argues that this factor weighs against transfer because the cases are timely proceeding to trial and further delay is unjustified. Dkt. 54, Response, at 10. The Court finds that this factor could slightly favor transfer given that it is timely proceeding to trial in this Court but will ultimately find it to be neutral given the speculative nature of this factor.

### 2. The Local Interest in Having Localized Interests Decided at Home

Courts must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*' " *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence. *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022).

Infineon argues that IFAM has "over ▮▮ employees located in Northern California," and that Infineon's sister company ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ collectively have "over ▮▮ employees in Northern California." Dkt. 26, Motion, at 13-14. Infineon also argues that the Accused Technology was developed or partially developed there, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 14. Infineon also argues that MOSAID has offices in the NDCA, so this is in essence a dispute between entities with presence in the NDCA—giving rise to local interest in the NDCA. *Id.*

MOSAID, however, argues that Infineon's headcount of employees is irrelevant because for this factor we look to "the significant connections between a particular venue and the events that gave rise to a suit." Dkt. 54, Response, at 10 (citing *Clarke*, 94 F.4th at 511). MOSAID argues that while "some" of the Accused Products may have been partially developed in the NDCA, R&D also occurred in the WDTX. *Id.* Further, Infineon admits that Accused Products are manufactured, tested, marketed, and sold in the WDTX—which MOSAID links to the events giving rise to their patent infringement suit here. *Id.* MOSAID argues that those activities create a strong localized interest in this District. *Id.* at 11.

The Court finds that this factor is neutral. While the Court credits MOSAID's argument that events giving rise to the suit occurred here, the Court cannot ignore the localized interest created by both Defendants' and Plaintiff's office presence in the NDCA. Therefore, the Court finds that this factor is neutral.

### 3. The Familiarity of the Forum With the Law That Will Govern the Case

The parties, and Court, agree that this factor is neutral.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The parties, and Court, agree that this factor is neutral.

## IV.    CONCLUSION

Having reviewed all the public and private interest factors, the Court finds that Infineon has not met its burden to show that there is good cause for transfer based on the NDCA being clearly more convenient based on significant gains that will actually materialize. Three private interest factors weigh against transfer and all the remaining factors are neutral. Defendant Infineon's Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California, (Dkt. 26 in -358; Dkt. 25 in -436) is hereby **DENIED**.

**SIGNED** on March 24, 2026.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE